An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-731

Filed 15 April 2026

Randolph County, No. 23JA000139-750

IN THE MATTER OF: E.S.W.

Appeal by respondent-father from order entered 14 April 2025 by Judge Darren Allen in Randolph County District Court. Heard in the Court of Appeals 11 March 2026.

*Conor Smith for petitioner-appellee Randolph County Department of Social Services.*

*Keith Karlsson for guardian ad litem.*

*Peter Wood for appellant-respondent-father.*

WOOD, Judge.

Respondent-Father ("Father") appeals from the trial court's order entered 14 April 2025 terminating his parental rights to E.S.W. ("Eric")[1] on the grounds of

---

[1] Pseudonyms are used to protect the identity of the minor child. *See* N.C. R. App. P. 42(b)(1).

neglect, willfully leaving the minor child in foster care for more than 12 months without showing reasonable progress in correcting the conditions which led to the removal of the minor child, and for willfully failing for a period of six continuous months preceding the filing to pay a reasonable portion of the cost of the care for the minor child although physically and financially able.[2] Father argues the trial court abused its discretion in finding it was in Eric's best interest for Father's parental rights to be terminated. Father does not challenge the grounds upon which the trial court relied for terminating his parental rights.

## I. Factual and Procedural Background

Eric was born on 1 November 2023. At the time Eric was born, paternity was at issue. Respondent-Mother ("Mother") was not married and did not list anyone as the biological father on Eric's birth certificate. Mother identified Father, who was incarcerated at the time of Eric's birth, as the putative father. On 2 November 2023, Randolph County Department of Social Services ("RCDSS") received a report stating Mother had tested positive for amphetamines, opiates, and fentanyl and Eric had tested positive for amphetamines and fentanyl at birth.

On 13 November 2023, RCDSS filed a juvenile petition alleging Eric to be a neglected and dependent juvenile. On the same day, the trial court entered an order for nonsecure custody. On 17 January 2024, Father was confirmed as Eric's biological

---

[2] Respondent-Mother is not a party to the appeal.

father. On 28 February 2024, the trial court entered its adjudication and disposition order adjudicating Eric to be a neglected juvenile and RCDSS voluntarily dismissed the allegation of dependency.[3] The trial court found Father had a history of substance use and that on 17 January 2024 his urine drug screen tested negative but his hair sample drug screen tested positive for methamphetamines. The trial court relieved RCDSS of reunification efforts with Mother after finding aggravating factors existed to warrant a cessation of reunification but ordered RCDSS to continue reasonable efforts to reunify Eric with Father.

On 24 June 2024, the trial court entered its order following the permanency planning hearing that took place on 8 May 2024. The trial court found in part:

> 66. The Father is not actively participating in services and is not cooperating with his service providers and RCDSS. The Father has not provided any verification of employment and income since the last court hearing. The Father was court ordered to complete a substance abuse assessment and has not provided RCDSS verification of completion. The Father was requested to complete a drug screen on February 12, 2024, the Father did not show up to complete the request.
>
> 67. The Father is available to the child, RCDSS, and the Court. The Father has attended 7 visits out of 12 since the last court hearing with the minor child. The Father has attended majority of the scheduled court hearings.
>
> 68. The Father is acting in a manner inconsistent with the health and safety of the child because he was engaged in

---

[3] Although the termination order states Eric was adjudicated to be a neglected and dependent juvenile, our review of the record reveals that Eric was only adjudicated neglected and the allegation of dependency was voluntarily dismissed.

> activities that made the parent unavailable to the child. The Father was incarcerated for Breaking and Entering and Larceny at the time of the minor child's removal. The Father is currently on probation. The Father tested positive for Methamphetamine at the last hair drug screen he attended on January 17, 2024. **(R 122-23).**

The trial court further determined that although ongoing reunification efforts with Father would be unlikely to lead to successful reunification in the next six months, reunification was still possible. The trial court granted supervised visitation to Father for one hour per week.

On 31 January 2025, RCDSS filed a motion to terminate Mother and Father's parental rights alleging Father had neglected Eric pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), willfully left Eric in foster care for more than 12 months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), and willfully failing for a period of six continuous months preceding the filing to pay a reasonable portion of the cost of the care for the minor child although physically and financially able to pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). On 5 March 2025, the trial court entered its pretrial hearing order.

The termination of parental rights hearing took place on 12 March 2025. On 14 April 2025, the trial court entered its written order terminating the parental rights for Mother and Father. On 6 May 2025, Father entered written notice of appeal.

## II. Analysis

On appeal, Father argues the trial court abused its discretion by terminating his parental rights and concluding termination of his rights to be in the best interest of the child. In addition to the contested findings of fact and conclusions of law discussed below, Father contends the trial court erred because he did the best he could despite his addiction, maintained a strong bond with Eric, did not willfully fail to overcome substance abuse, did not willfully fail to become a suitable father, and it was the "disease of addiction" that stopped him from achieving the goals he wanted to reach. Father does not contest the trial court's conclusion that grounds exist to terminate parental rights.

### A. Standard of Review

We review a trial court's determination of whether terminating parental rights is in the best interest of the child under an abuse of discretion standard of review. *In re J.J.B.*, 374 N.C. 787, 791, 845 S.E.2d 1, 4 (2020). "Under this standard, we defer to the trial court's decision unless it is 'manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.'" *Id.* (quoting *In re Z.A.M.*, 374 N.C. 88, 100, 839 S.E.2d 792, 800 (2020)). Contested dispositional findings of fact are reviewed to determine whether they are supported by competent evidence; uncontested findings are binding on appeal. *In re J.J.B.*, 374 N.C. at 793, 845 S.E.2d at 5. Conclusions of law are reviewed *de novo*. *In re N.T.*, 289 N.C. App. 149, 152, 888 S.E.2d 231, 234 (2023).

- 5 -

Termination of parental rights proceedings consist of first, an adjudicatory stage and second, a dispositional stage. *In re J.J.B.*, 374 N.C. at 791, 845 S.E.2d at 4. If the trial court finds grounds to terminate parental rights in the adjudicatory stage under N.C. Gen. Stat. § 7B-1111(a), it can then proceed to the dispositional stage where it must be determined whether it is in the minor child's best interest to terminate parental rights. *Id.* When determining whether termination of parental rights is in the child's best interest, the trial court must consider the following factors:

> 1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a); *In re N.B.*, 379 N.C. 441, 444-45, 866 S.E.2d 427, 430 (2021). Here, Father does not argue the trial court erred in concluding grounds existed to terminate parental rights, thus, we review only whether the trial court properly concluded that terminating Father's parental rights was in Eric's best interest.

## B. Best Interest of Child Determination

Father "specifically disputes" several findings of fact and conclusions of law

surrounding the trial court's dispositional determination that it was in the best interest of the child to terminate Father's parental rights. Specifically, Father disputes the trial court's findings of fact 95, 96, 99, and 110; conclusions of law 10 and 12; and decree 3.

> 95. The Respondent Father is not a fit and proper person to have the care, custody, and control of the minor child.
>
> 96. The Respondent Father has acted in a manner that is wholly inconsistent with his constitutionally protected status as the biological father of the minor child.
>
> . . . .
>
> 99. Based upon the evidence received, the Court finds that it is in the minor child's best interests to terminate the parental rights of the Mother and the Father, so that the minor child may be legally freed for adoption.
>
> . . . .
>
> 110. The minor child has little to no bond with the Father. The minor child is very young and has not lived with the Father. There was a period of time when the Father had not visited the minor child in over two months between May 7, 2024 to July 14, 2024.
>
> . . . .
>
> 10. Pursuant to N.C. Gen. Stat. § 7B-1110, it is in the best interest of the child to terminate the Mother's and Father's parental rights.
>
> . . .
>
> 12. The best interest of the minor child will be served by the entry of an Order terminating the parental rights of the Respondent Mother and the Respondent Father in and to the minor child.

. . . .

> 3. That the parental rights of Respondent Father . . . be and are herewith irrevocably terminated in and to the minor child, [Eric], and of the said minor child in and to his Father; those being all the rights and obligations of the Father to the minor child and of the said minor child to the Father arising from the parental relationship hereby being fully and irrevocably terminated.

The trial court's determination it is in Eric's best interest to terminate Father's parental rights and that Father has acted in a manner inconsistent with his constitutionally protected rights as a biological father are more appropriately classified as conclusions of law and will be reviewed as such. *In re N.T.*, 289 N.C. App. at 160, 888 S.E.2d at 239. Father makes no specific argument as to why any one of the identified findings and conclusions were made in error except for a general contention that Eric would be better off with Father in his life and that he did the best he could as a parent despite his addiction. However, we conclude the trial court's challenged conclusions of law are supported by the following uncontested findings of fact:

> 52. The Father has not stayed in consistent contact with RCDSS throughout the life of the case.
>
> . . . .
>
> 70. The Father has not completed a substance abuse assessment and complied with all recommendations.
>
> 71. The Father has not refrained from abusing impairing substances and has not submitted to all random drug screens on the days and times requested by RCDSS. The Father admits to continuing his use of illegal substances as

last using illegal substances as recent as November 2024.

. . . .

79. The Father has not obtained stable housing that meets basic standards of safety and cleanliness.

. . . .

85. The Father could have contributed to reasonable cost of care for the minor child but for the six months before the filing of the Motion to Terminate, failed to do so.

. . . .

100. The minor child is currently the relatively young age of 1 year [] and has been in foster care for over 476 days.

101. The minor child has a high likelihood of being adopted.

102. The placement providers of the minor child have expressed their desire to adopt the minor child, if he was to become legally free for adoption.

103. The bond between the kinship placement providers and the minor child is a parent-like bond. The minor child calls the kinship providers "mama" and "dada." The bond between the kinship providers' children and the minor child are a family and sibling like bond. The minor child is a toddler and cannot speak. However, the minor child can recognize the kinship provider's voice, gets excited hearing and seeing them and is comforted by them. When the minor child is not walking around, he asks to be held by the kinship providers.

104. Even if the minor child cannot be adopted by his current placement, he has no major behavior, medical, mental health, educational, or other disability that would provide an obstacle in him being adopted.

105. The minor child's primary plan is adoption and terminating the Mother's and Father's rights will aid in achieving that plan.

106. The minor child has never resided with the Mother or Father.

. . . .

109. Since the minor child has been in RCDSS's care, the Father [had] the possibility of 48 visits. He has attended 21 visits. Visits were initially ordered weekly, supervised at RCDSS. On October 23, 2024, the Court ordered the visits reduced to one hour every other week. The Father did not consistently engage in visits and on January 8, 2025, the Court reduced visits to being once a month.

These findings demonstrate that the trial court considered the age of the juvenile, his likelihood of adoption, whether termination would aid in the accomplishment of the permanent goal, the bond between Eric and Father, the relationship between Eric and the kinship placement, and other factors such as Father's noncompliance with reunification efforts and substance abuse. *See* N.C. Gen. Stat. § 7B-1110(a); *In re N.B.*, 379 N.C. at 444-45, 866 S.E.2d at 430. Therefore, we hold the trial court did not abuse its discretion by terminating Father's parental rights because the determination that it was in the child's best interest is supported by the necessary findings which are based on clear and convincing evidence.

### III. Conclusion

For the reasons stated herein, we hold the uncontested findings of fact support the trial court's conclusions of law that it is in the child's best interest to terminate Father's parental rights. Therefore, the trial court did not abuse its discretion, and we affirm the trial court's order terminating Father's parental rights.

AFFIRMED.

Judges STROUD and ARROWOOD concur.

Report per Rule 30(e).